436 So.2d 500 (1983)
STATE of Louisiana
v.
Sherry E. LITTLETON.
No. 82-KA-1443.
Supreme Court of Louisiana.
June 27, 1983.
Rehearing Denied September 1, 1983.
*502 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Lavalle Salomon, Joseph Michel, Nancy Gilliland, Asst. Dist. Attys., for plaintiff-appellee.
Steven A. Hansen, Malcolm De Celle, Jr., DeCelle & Hansen, Monroe, for defendant-appellant.
DIXON, Chief Justice.
Defendant Sherry E. Littleton was charged by grand jury indictment with conspiracy to commit first degree murder of her husband, John Littleton, in violation of R.S. 14:26 and 14:30.[1] She was tried, found guilty, and sentenced to thirty years at hard labor, to run consecutively with her previous sentences for negligent homicide and perjury arising out of this incident. Defendant appeals her conviction and sentence.
On the evening of January 17, 1979, defendant, her sister Patricia Knowles, and Winfred Chappel visited several bars together in Monroe, Louisiana, drinking alcohol, smoking marijuana and taking amphetamines. Chappel left the two women before midnight, and shortly after midnight the Ouachita Parish Sheriff's Office received a call concerning a shooting in West Monroe at defendant's trailer home. Defendant's husband had been shot once in the chest with a 16 gauge shotgun. Defendant told the officers that she shot her husband in self-defense after he had beaten and threatened her. Defendant had numerous bruises on her face.
On March 30, 1979 defendant was indicted for manslaughter, and on July 19, 1979, pursuant to negotiations with the district attorney's office, pleaded guilty to negligent homicide and was sentenced to five years at hard labor.
Subsequent to Littleton's incarceration, Knowles and Chappel came forward with the following facts. On the evening of January 17, 1979 the three had visited several bars, and defendant repeatedly asked Chappel to kill her husband. Although romantically involved with defendant at the time, Chappel refused. The three then went to the parking lot of a convenience store where defendant, at her own request, was struck several times in the face by Chappel, as part of a plan to make it seem that she had been beaten by her husband. Defendant and Knowles then drove to defendant's trailer home. Patricia Knowles told authorities in Kansas that it was she who actually shot her brother-in-law. She was returned to Louisiana where she was indicted for conspiracy to commit murder and for first degree murder. Knowles was acquitted of the first degree murder charge after testifying in her own defense at trial, and the conspiracy charge was thereafter quashed because of her acquittal on the murder charge arising out of the same facts. State v. Knowles, 392 So.2d 651 (La. 1980).
Sherry Littleton was indicted by the grand jury on December 11, 1979 for perjury before the grand jury investigating the death of John Littleton, and for conspiring with Patricia Knowles to commit first degree murder. Defendant was convicted of perjury in June of 1980, and her conviction and sentence were affirmed. 395 So.2d 730 (La.1980). In March of 1982, after numerous pretrial motions, defendant was tried and convicted of conspiracy, and this appeal followed.

Assignments of Error Nos. 1 and 2
Defendant alleges as Assignment of Error No. 1 that the trial court erred in denying defendant's plea of autrefois acquit, res judicata, collateral estoppel and former jeopardy. In Assignment of Error No. 2 defendant alleges the trial court erred in *503 denying defendant's "motion to estop." Defendant's plea is based upon her negligent homicide conviction, while the motion is based on Patricia Knowles' acquittal and successful motion to quash the conspiracy indictment.
No person shall be twice put in jeopardy of life or liberty for the same offense. Amendment V, United States Const.; Art. 1, § 15, La. Const.; C.Cr.P. 591. The test for determining if two offenses are distinguishable was stated in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):
"... where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not...."
The rule applies to consecutive punishments as well as to successive prosecutions. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In Louisiana, the statutory limitation on the prohibition against double jeopardy is found in C.Cr.P. 596.[2]
Negligent homicide is defined in R.S. 14:32 as "... the killing of a human being by criminal negligence." Criminal conspiracy is defined in R.S. 14:26:
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.
If the intended basic crime has been consumated, the conspirators may be tried for either the conspiracy or the completed offense, and a conviction for one shall not bar prosecution for the other."
Negligent homicide does not require evidence of an agreement which is necessary for a conspiracy conviction; criminal conspiracy to commit first degree murder does not require evidence of an illegal homicide, which is necessary for a negligent homicide conviction. Each crime, therefore, requires proof of an additional fact which the other does not. Neither subsequent prosecutions nor consecutive punishments are barred by reason of Blockburger's double jeopardy test.
Defendant contends also that the crimes were a part of a single transaction, commencing at 5:00 p.m. on the afternoon of January 17 and ending with the death of Mr. Littleton. There is no merit in defendant's argument. In State v. Solomon, 379 So.2d 1078 (La.1980), the same argument was raised concerning a burglary of an automobile and the theft of a watch from inside the glove compartment. This court found the burglary complete upon entry of the automobile with the intent to commit a theft. The actual theft of the watch did not occur until the watch was removed from the glove compartment. In this case, the conspiracy was completed by Sherry Littleton having her face bruised to provide the self-defense justification after the agreement had been reached. The actual homicide of Mr. Littleton was a later, separate and distinct act.
Finally, defendant contends the doctrine of collateral estoppel bars the state from bringing her to trial since the state was prevented from bringing a conspiracy charge against Patricia Knowles, the alleged coconspirator. Defendant relies on the principle of law that a person can not be convicted of conspiring with himself.
The doctrine of collateral estoppel was explained and applied to criminal cases by *504 Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). This court applied the doctrine in State v. Knowles, supra, and adopted the Supreme Court's definition of collateral estoppel:
"`... It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit....'" 392 So.2d at 655. (Emphasis added).
The doctrine of collateral estoppel is grounded in the Fifth Amendment guarantee against double jeopardy. Ashe v. Swenson, supra; State v. Knowles, supra. Sherry Littleton was not in jeopardy in the trial of Patricia Knowles. In State v. Doucet, 359 So.2d 1239, 1248 (La.1978), we held that "the application of collateral estoppel in this State is limited to those cases where it is required by Ashe v. Swenson, supra." We are aware of no instance where collateral estoppel has been constitutionally required in criminal cases involving different defendants.[3] See United States v. Hatrak, 588 F.2d 414, 416 (3d Cir.1978), cert. denied, 440 U.S. 974, 99 S.Ct. 1541, 59 L.Ed.2d 792 (1979), where the Court of Appeal affirmed a district court's conclusion that "the Constitution does not require application of collateral estoppel in favor of one defendant because of the outcome in the trial of another defendant."
These assignments of error lack merit.

Assignments of Error Nos. 4 and 5
By these assignments of error, defendant complains of improper questioning of Winfred Chappel by the district attorney.
On direct examination, the district attorney questioned Chappel about contact he had had with the defendant:
"Q And did youdid you have any physical contact with Ms. Littleton on that day?
A No, sir, I did not.
Q Did you touch her at any time?
A Yes, sir.
Q In what fashion?
A A hug.
Q Okay, any other kind of contact?
A No, sir."
Chappel then testified to the events that occurred later at the convenience store parking lot:
"Q And anything unusual happen there?
A Yes, sir.
Q What was that?
A I slapped Ms. Littleton"
Defense counsel objected, alleging that the state was attempting to impeach its own witness who had previously testified that the only contact he had had with Ms. Littleton was a hug. The court ruled:
"Well, I don't find the question what did you do as an attempt to impeach. It was a fair question. He answered it. Now if his answer impeaches some other statement that he made, then that's thethe court will accord his testimony what weight it deems fit, but I don't feel that the State was intentionally attempting to impeach its witness."
Testimony continued:
"Q I'm sorry, you said you slapped Ms. Littleton?
A Yes, sir, I did.
Q Why did you slap her?
A She asked me to.
Q How many times did you slap her?
A Three or four.
Q On the body or where on her?
A In the face.
Q Do you remember which side of the face?
A No, sir, I don't. It was
Q Okay, whywhy did you do that?
A She asked me to.

*505 Q And what was your understanding of why you were doing that?
A I'm not really for sure.
Q What did you think at the time?"
At this point defense counsel objected, saying that the question called for a conclusion on the part of the witness. The court overruled the objection:
"I'll let him answer as to what his understanding was at that time, and let me caution you, Mr. Chappel. Do not speculate as to what you might have deducted or concluded the next day or later on thatlater that night or anything else. You may testify strictly as to what you thought at that particular moment standing in that particular parking lot."
Testimony continued.
"Q You can go ahead and answer.
A For an alibi.
Q An alibi for what?
A Whatever they were going to do.
Q To whom?
A To her husband.
Q You say they. Who are you speaking of they?
A Her and Ms. Knowles.
Q Okay, why do you include Ms. Knowles?
A Because she was sitting in the car.
Q While you slapped Ms. Littleton?
A Yes, sir."
On cross-examination the next day, defense counsel asked about Chappel's physical contact with the defendant:
"Q Let's see, yesterday morning [the district attorney] asked you if you were physical with Sherry Littleton and you said no and then you said you hugged her and then you slapped her, but you did hug her, right?
A Yes, sir.
Q And that's allthat's the only physical you were with her?
A Yes, sir.
Q Except for the slap?
A Yes, sir."
And on redirect examination, Chappel testified:
"Q What did you think I meant by physical when I asked you that yesterday?
A I thought you meant sexually or anything like that."
Taking Chappel's testimony as a whole, the two statements, that the only physical contact was a hug and that he slapped Littleton, were not inconsistent. Rather, the testimony shows only a misunderstanding of the scope of the question asked by the prosecutor. See State v. Edwards, 419 So.2d 881, 891 (La.1982). There was no genuine and proper effort by the state to impeach its own witness. State v. Redwine, 337 So.2d 1041, 1047 (La.1976). The ruling of the trial judge was proper.
With regard to Chappel's statement that he thought he was slapping Littleton in order to provide her with an alibi, defendant relies on R.S. 15:463, which provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
This court has recognized that a witness may testify to a natural inference from something he has observed provided the witness states the basic facts upon which the inference is based. State v. Prestridge, 399 So.2d 564, 572 (La.1981); State v. George, 346 So.2d 694 (La.1977). Chappel testified that he, Littleton and Knowles had been drinking in several bars throughout the course of the evening and that he had been asked to shoot Littleton's husband that night, which he refused to do. Littleton then asked him to slap her face. She did not scream or try to get away. Chappel's testimony related a natural inference from what he had observed throughout the evening. The trial judge specially cautioned Chappel to testify only as to what he thought at the time he was slapping her face. From the conversation that evening among the three people, it was natural to infer that the reason he beat the defendant before she went home was to provide her *506 with evidence of a justification for the shooting of her husband.
These assignments of error lack merit.

Assignments of Error Nos. 6 and 7
While defendant was incarcerated, she told two other inmates that she had planned the murder of her husband with Knowles and Chappel. Defendant objected to the introduction of the testimony of Ms. Wamble (Assignment No. 6) and Ms. Nickens (Assignment No. 7) on the basis that the state had not proved the corpus delicti at the time the statements were offered. Our law does not require the proof of the corpus delicti prior to the admission of other evidence. C.Cr.P. 773; State v. Neslo, 433 So.2d 73 (La.1983); State v. Mullins, 353 So.2d 243 (La.1977); State v. Hill, 135 La. 625, 65 So. 763 (1914); State v. Gebbia, 121 La. 1083, 47 So. 32 (1908).
These assignments lack merit.

Assignment of Error No. 8
By this assignment of error, defendant contends the trial court erred in imposing the maximum sentence of thirty years, and in making the sentence consecutive with other sentences she received for related offenses.
At the time defendant was sentenced for the present conspiracy conviction, she was serving two consecutive five year sentences for negligent homicide and for perjury before the grand jury. She had no other criminal record. This court has recognized that concurrent sentences, rather than consecutive sentences, are the usual rule in absence of a showing that public safety requires a longer sentence. State v. Ortego, 382 So.2d 921, 923 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Underwood, 353 So.2d 1013, 1019 (La.1977). However, this court has never held that consecutive sentences will necessarily be found excessive, even where the convictions arise out of a single course of conduct. State v. Ortego, supra; State v. Molinario, 400 So.2d 596, 600 (La. 1981).
Defendant contends that the consecutive sentence imposed in this case is not in compliance with C.Cr.P. 883.[4] This article is of no aid to defendant; it specifically excludes from its scope sentences the court expressly directs are to be served consecutively.
Neither is the sentence imposed upon this defendant excessive. The evidence indicates the defendant planned and executed the murder of her husband. The judge stated that the evidence presented at trial indicated a complete disregard for human life, and found it to be a very cruel and heinous offense. Her perjury before the grand jury enabled her to plead guilty to a reduced charge of negligent homicide, and prevented the state from prosecuting her for first degree murder which would have carried a penalty of life imprisonment. The conspiracy did in fact lead to the murder of John Littleton. "Maximum sentences are appropriately imposed in cases involving the most serious violations of the described offense, and for the worst kind of offender." State v. Jones, 398 So.2d 1049, 1053 (La.1981).
This assignment of error lacks merit.
For these reasons, the defendant's conviction and sentence are affirmed.
WATSON, J., dissents and assigns reasons.
WATSON, Justice, dissenting.
When there is a plea bargained guilty plea to a substantive offense, later prosecution for conspiracy to commit that offense *507 is barred. Defendant Littleton was charged with manslaughter in connection with the shooting death of her husband, although she pled guilty to negligent homicide. Manslaughter is a responsive verdict to first degree murder, and it is immaterial that manslaughter is a lesser grade of the offense. Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Fundamental fairness precludes the state from entering into a plea bargain concerning a substantive offense and then initiating prosecution for conspiracy to commit that offense. Compare Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977).
I respectfully dissent.
NOTES
[1] At the time of this offense, R.S. 14:30 provided:

"First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
Whoever commits the crime of first degree murder shall be punished by death or life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence in accordance with the recommendation of the jury."
[2] "Double jeopardy exists in a second trial only when the charge in that trial is:

(1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
(2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial." C.Cr.P. 596.
[3] In Standefer v. United States, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), the Supreme Court declined to apply nonmutual collateral estoppel in a federal criminal case where defendant corporate executive was on trial for aiding and abetting an IRS agent to receive unlawful compensation after the agent had been acquitted of receiving the unlawful compensation in a separate trial. But see State v. Haines, 51 La.Ann. 731, 25 So. 372 (1899).
[4] "If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently." C.Cr.P. 883.