539 So.2d 993 (1989)
STATE of Louisiana
v.
Leon SMITH.
No. KA-7409.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1989.
*994 Harry F. Connick, Dist. Atty., Susan Kreston, Asst. Dist. Atty., Orleans Parish, Rozalind Smith, Law Clerk, Office of the Dist. Atty., New Orleans, for appellee.
Sherry Waters, Orleans Indigent Defender Program, New Orleans, for defendant.
Before SCHOTT, C.J., and KLEES and WILLIAMS, JJ.
WILLIAMS, Judge.
On February 5, 1986 defendant, Leon Smith, and his co-defendant, Jody Blair were charged with three counts of armed robbery, in violation of LSA-R.S. 14:64, for the December 30, 1985 robbery of Salvadore and Lesley Chetta and their egg man, J.V. Muller. Both defendants pled not guilty at their arraignment on February 14, 1986. Thereafter, Blair withdrew his plea of not guilty, pled guilty as charged, and was sentenced to thirteen years imprisonment. Smith maintained his plea of not guilty, was tried by a twelve-member jury on April 24, 1986 and was found guilty as charged on all three counts. He was sentenced on May 8, 1986 to serve sixty years at hard labor on counts one and two, the robberies of Mr. and Mrs. Chetta, and to serve forty years at hard labor on count three, the robbery of Mr. Muller. The court ordered that each sentence be served without benefit of parole, probation or suspension of sentence. The court also ordered that the sentences on counts one and two be served concurrently and the sentence on count three be served consecutively. At that time, a multiple bill was also filed, but on June 18, 1986, Smith was found not to be a multiple offender. Smith now contends that the sentence imposed is unconstitutionally excessive as the counts are to be served consecutively and not concurrently. For the reasons stated below, Smith's conviction is affirmed, but the case is remanded for resentencing consistent with this opinion.
FACTS
On the afternoon of December 30, 1985 an elderly couple, Salvadore and Lesley Chetta, returned home from grocery shopping, at approximately 4:00 p.m. After entering their garage by using their automatic garage door opener, Mrs. Chetta went into the house to make a telephone call while Mr. Chetta unloaded groceries. Suddenly, an unknown man with a gun appeared in the garage and relieved Mr. Chetta of his ring and wallet containing approximately $150.00.
Having completed her phone call, Mrs. Chetta stepped out of the house door and into the garage. Another man ran up to her, placed a gun to her head and forced her back into the house. The first gunman then took Mr. Chetta into the kitchen where Mr. Chetta was robbed of the few dollars remaining in his pocket, as well as his chain and watch. Mr. Chetta was then ordered to lie on the floor; he could see his wife being forced into the bedroom by the second gunman.
The second gunman took the jewelry Mrs. Chetta was wearing and forced her to accompany him in his pursuit of additional jewelry. In the bedroom, he found and took Mr. Chetta's gun, Mrs. Chetta's chains *995 and earrings, and her purse containing her wallet, money, credit cards and glasses. Mrs. Chetta was then ordered to lie on the floor.
Mr. J.V. Muller, an egg delivery man, knocked on the door and was told by the robbers to enter. Inside the house, he set down the eggs and was about to leave when, at gun point, he was told to remain. He then noticed that besides the gunman holding him, there were two other gunmen. After he was relieved of his credit cards, change and wallet, Mr. Muller told the gunmen that his son was waiting across the street for him. The three gunmen then fled from the house.
In response to Mrs. Chetta's telephone call, the police investigated the scene and found latent fingerprints that matched Blair's prints. No latent prints from the scene, however, matched Smith's fingerprints. On January 7, 1986, the police arrested Blair. He confessed to the police and gave them Smith's name. As a result, that same evening, January 7, 1986, Smith was arrested at his girlfriend's apartment where the police found him hiding under the bed along with Mr. Chetta's gun.[1] Mr. Muller identified Smith as the man who held the gun on him while the other two men robbed him. The Chettas were unable to identify their assailants.
In exchange for his guilty plea and his trial testimony, Blair received a thirteen year sentence. He testified that he was standing outside his apartment at the St. Bernard Project when Leon Smith and Willie Meyers approached him insisting he accompany them in their search for someone to rob. He claimed that at first he resisted but succumbed after the other two threatened him. The trio then drove around for approximately fifteen minutes before stopping near the Chetta home.
Blair testified that Smith robbed Mr. Chetta in the garage and he robbed Mrs. Chetta in the house. He admitted stealing the jewelry in Mrs. Chetta's bedroom and taking Mr. Chetta's gun, which he subsequently gave to Smith. Blair ordered Mrs. Chetta to lie on the bedroom floor. As he left the room, Blair noticed Mr. Chetta and another man lying on the floor in another room. Blair, Smith and Meyers then fled.
Subsequent to his arrest, Smith waived his rights and gave a statement to the police. Prior to trial, a Motion to Suppress Confession was filed as to each defendant, but after a hearing, the motion was denied by the trial court. Smith's Motion to Suppress evidence was also denied.
At trial, Smith produced two witnesses who were occupants of his girlfriend's apartment at the time he was arrested. They testified that Smith was sitting on the bed when he was arrested. Smith denied that he was hiding under the bed at the time of his arrest; he claimed that when the officers found nothing after seaching the apartment in which he was arrested, they took him to Meyer's apartment, searched it and then indicated that Mr. Chetta's gun had been found when they had arrested him. He denied participating in the robbery of Mr. Muller and the Chettas, but admitted to having two prior convictions for illegal possession of stolen property.
ASSIGNMENT OF ERROR
Smith's sole assignment of error is that the sentence imposed is unconstitutionally excessive as the counts are to be served consecutively and not concurrently. He particularizes his assertion with the claims that there is no basis for imposing consecutive sentences because all counts arose out of the same transaction which did not involve particularly aggravating circumstances, and that the broad language used by the court while imposing the consecutive sentence fails to satisfy the requirements of LSA-C.Cr.P. art. 894.1. As we agree with defendant's latter contention, the case is remanded to the trial court for resentencing.
LSA-C.Cr.P. art. 883 provides in pertinent part "[i]f the defendant is convicted of two or more offenses based on the *996 same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively." State v. Piazza, 496 So.2d 1229, 1231 (La. App. 5th Cir.1986). While it is true that sentences for crimes arising out of a single course of conduct are generally served concurrently instead of consecutively, consecutive sentences for crimes arising out of the same course of conduct have never been held excessive per se. See State v. Williams, 445 So.2d 1171, 1182 (La.1984); State v. Tomlin, 478 So.2d 622, 624 (La. App. 2d Cir.1985); State v. Lighten, 516 So.2d 1266, 1268 (La.App. 2d Cir.1987); State v. Piazza, 496 So.2d 1229, 1231 (La. App. 5th Cir.1986). The imposition of consecutive sentences for convictions arising out of a single course of criminal conduct, however, does require particular justification. State v. Lewis, 416 So.2d 921 (La. 1982); State v. Piazza, 496 So.2d 1229 (La. App. 5th Cir.1986); State v. Lighten, 516 So.2d at 1268.
Factors to be considered by the sentencing court when imposing consecutive sentences include those enumerated in LSA-C.Cr.P. art. 894.1, and whether the defendant poses an unusual risk to the safety of the public. State v. Piazza, 496 So.2d at 1232 [factors to be considered include the multiplicity of acts, lack of remorse, and the risk to the public]; State v. Parker, 503 So.2d 643 (La.App. 4th Cir. 1987) [other factors include defendant's criminal history, the dangerousness of the offense, the viciousness of the crimes, the harm done to the victim, the potential for defendant's rehabilitation, and the danger posed by the defendant to the public]; State v. Lighten, 516 So.2d at 1268; State v. Tomlin, 478 So.2d at 624; State v. Piazza, 496 So.2d at 1232. Moreover, Article 894.1 requires that the sentencing court state for the record its considerations and its basis for the sentence. State v. Williams, 445 So.2d at 1182. See also State v. Tomlin, 478 So.2d at 624 [the sentencing court noted for the record defendant's prior arrests, his record of harrassing teenage girls, his poor work record, and the serious likelihood of his committing further crimes]; State v. Piazza, 496 So.2d at 1232 [the sentencing court noted that defendant committed the crimes over an extended period of time and the acts were clearly premeditated. Those considerations, along with defendant's refusal to admit the criminality of his acts led the court to conclude that a lesser sentence would create a substantial risk that defendant, upon release, would perpetuate similar acts upon the unsuspecting public]; State v. Lighten, 516 So.2d at 1268 [defendant's criminal history as a repeat offender indicated that defendant imposed a risk to the safety of the public so that his consecutive sentences were supported by the record].
In the present case, although the sentencing court noted that it considered the act of robbing an elderly couple of their possessions in their home to constitute serious circumstances, that it considered the provisions of LSA-C.Cr.P. art. 894.1 and that it recognized the Multiple Offender Bill of Information filed against defendant, the sentencing court did not articulate its particular justification for imposing consecutive sentences for defendant's crimes. Accordingly, as the record does not contain the particular justification for the imposition of consecutive sentences for defendant's counts which arose out of a single course of conduct, we remand the case to the trial court for resentencing.
ERRORS PATENT
A review of the record reveals that the minute entry of the trial court lists the names of only eleven jurors. The jury sheet, however, lists that all twelve jurors were present at defendant's trial. Accordingly, as the record shows twelve jurors were present, the error in the minute entry is harmless error.
For the reasons assigned, defendant's conviction is affirmed, but is remanded to the sentencing court for resentencing consistent with this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] The officers had an arrest warrant, but not a search warrant. The officers were admitted by Smith's girlfriend, a resident of the apartment.