552 So.2d 445 (1989)
STATE of Louisiana
v.
Anthony JACKSON.
No. KA-6907.
Court of Appeal of Louisiana, Fourth Circuit.
October 12, 1989.
*446 William J. Guste, Jr., Atty. Gen., William B. Faust, III, Asst. Atty. Gen., and Harry F. Connick, Dist. Atty., A. Hammond Scott, Asst. Dist. Atty., New Orleans, for appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for appellant.
Before SCHOTT, C.J., and KLEES and LOBRANO, JJ.
LOBRANO, Judge.
Defendant, Anthony Jackson, was charged by grand jury indictment with one count of aggravated rape, one count of armed robbery and one count of aggravated crime against nature, violations of La. R.S. 14:42, 14:64 and 14:89.1, respectively.
Defendant was arraigned on April 29, 1986 and pled not guilty to each count. Trial was held on August 26th and 27th, 1986. Defendant was found guilty as charged on all three counts by a twelve-member jury. On September 11, 1986, defendant was sentenced to life imprisonment on the rape charge; to fifty (50) years at hard labor on the robbery charge; and fifteen (15) years at hard labor on the crime against nature charge. All sentences were imposed without benefit of parole. The sentencing court ordered the sentences to run consecutively.
FACTS:
On the evening of March 17, 1986, the victim, hereinafter referred to as "J.B.", was walking along Bourbon Street with some friends. J.B. was not feeling well. She parted company with her friends intending to walk around alone for a short time and then return to her hotel. As she walked around the French Quarter, defendant fell into step next to her and began a conversation. J.B. vaguely answered his remarks but did not encourage a continuing conversation. However, defendant continued to walk along next to J.B. J.B. did not tell defendant her name or where she was staying. At some point during the encounter with defendant, J.B. told him she was leaving and walked back to her hotel on Canal Street. J.B. did not realize defendant was following her as she did not look back.
*447 The security guard at the hotel testified that J.B. entered the hotel, briefly spoke to another guest and then got into the elevator. The guard stated that defendant looked in the door of the hotel and watched J.B. walk toward the elevators. He then waited a short while and then began to walk toward the elevators. As the guard walked toward defendant, defendant walked down the corridor and out of the back door of the hotel.
J.B. had been in her room for about twenty minutes when she thought she heard her friend enter his room next door. She went to his room and knocked on the door. Receiving no answer she turned to walk back to her room. As she did so, she was confronted by defendant. He grabbed her by the throat and dragged her back into her room, closing the door behind them. Defendant then placed a knife to her throat and threatened to kill her. She grabbed the knife by the blade, cutting her hand, and knocked it across the room. Defendant then grabbed her by the throat, forced her to the floor, took her underwear off, repeatedly raped her both vaginally and anally and forced her to perform fellatio on him. Throughout the rape, defendant threatened to kill J.B. After approximately two hours, J.B. pretended to lose consciousness while defendant was beating her. Defendant cut the cord from her roommate's iron, bound her feet and ransacked her luggage. He took $160.00 from her jacket pocket and then left the room. J.B. managed to untie her feet. She called the front desk and told the supervisor she had been raped, described defendant and asked that he be stopped before he left the hotel. The supervisor saw defendant in the parking lot, and with the help of some guests detained him until the guard arrived. The guard took defendant into his office and searched him. He found a knife and the money taken from J.B. The police were called. Later J.B. identified defendant as her assailant.
Defendant admitted having sex with J.B. However, he insisted that she invited him up to her room for this purpose. He stated they met on Bourbon Street and went to a few bars together. She then invited him up to her room. He stated the bruises she sustained were from the "physical" sex that they engaged in. He stated that after she fell asleep, he tied her up and took the money. He denied threatening her with a knife or threatening to kill her.
In his appeal, defendant asserts the sentencing court erred by imposing an excessive sentence when it ordered the sentences to run consecutively. We disagree.
Code of Criminal Procedure Article 883 provides in pertinent part:
"If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively...."
Generally, sentences for crimes arising out of a single course of conduct are served concurrently. However, the imposition of consecutive sentences for such crimes is not automatically excessive. State v. Williams, 445 So.2d 1171 (La. 1984); State v. Smith, 539 So.2d 993 (La. App. 4th Cir.1989); State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987).
In Smith, this Court listed the factors to be considered by the sentencing court when imposing consecutive sentences:
"Factors to be considered by the sentencing court when imposing consecutive sentences include those enumerated in La.C. Cr.P. Art. 894.1, and whether the defendant poses an unusual risk to the safety of the public. State v. Piazza, 496 So.2d [1229] at 1232 [La.App.5th Cir.1986] [factors to be considered include the multiplicity of acts, lack of remorse, and the risk to the public]; State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987) [other factors include defendant's criminal history, the dangerousness of the offense, the viciousness of the crimes, the harm done to the victim, the potential for defendant's rehabilitation, and the danger posed by the defendant to the public]; State v. Lighten, 516 So.2d [1266] at 1268 [La.App.2nd Cir.1987]; State v. Tomlin, 478 So.2d [622] at 624 [La. *448 App.2nd Cir.1985]; State v. Piazza, 496 So.2d at 1232. Moreover, Article 894.1 requires that the sentencing court state for the record its considerations and its basis for the sentence. State v. Williams, 445 So.2d at 1182" at p. 996
When a court imposes consecutive sentences for crimes arising out of a single transaction, it must articulate particular justification for such a sentence beyond a mere articulation for the standard sentencing guidelines established in C.Cr.P. Art. 894.1; State v. Messer, 408 So.2d 1354 (La. 1982); State v. Smith, supra.
Although there is a "presumption" of concurrent sentences for sametransaction crimes, this "presumption" may be rebutted without an abuse of discretion if the sentencing court "expressly directs" the imposition of consecutive sentences and explains the reasons. State v. Ashley, 463 So.2d 794 (La.App.2nd Cir.1985). Code of Criminal Procedure Article 883 "specifically excludes from its scope sentences the court expressly directs are to be served consecutively". State v. Littleton, 436 So.2d 500 (La.1983).
Thus, consecutive sentences for sametransaction crimes are not per se excessive if the trial court considers other appropriate factors in imposing the sentence. State v. Ortego, 382 So.2d 921 (La. 1980), cert. den., 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Some of these factors include defendants' first-offender status, State v. Ortego, supra; the dangerousness of the offense and the public safety, State v. Underwood, 353 So.2d 1013 (La.1978); the harm done to the victim, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ den., 435 So.2d 433 (La. 1983); and the potential for rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983).
In the instant case, the sentencing judge "expressly directed" that the sentences be served consecutively. He stated:
"... All of these sentences are to run consecutively with each other.
The reasons for these sentences are as follows: ..."
The court then proceeded to list both the aggravating and mitigating factors which he considered in imposing sentence. He specifically referred to defendant's young age and lack of a criminal record stating that both of these considerations were overridden by the nature of the offense and the facts adduced at trial. The fact that the sentencing court did not specifically use the phrase, "The reasons for these consecutive sentences are as follows:," is of no consequence. A review of the sentencing transcript clearly indicates that the sentencing court explained the reasons for sentencing as they pertained to the sentence as a whole which explanation included the reasons for the imposition of consecutive sentences.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
SCHOTT, C.J., dissents with reasons.
SCHOTT, Chief Judge., dissenting:
I would remand the case for resentencing. While the trial court reviewed the guidelines of C.Cr.P. art. 894.1 in imposing the sentences he failed to state why he was imposing consecutive rather than concurrent sentences. I am not suggesting that consecutive sentences are necessarily excessive in this case; only that, if the trial judge reimposes consecutive sentences he must articulate particular justification for doing so. I respectfully submit that the majority opinion affirming the sentences is inconsistent with this court's opinion in State v. Smith, 539 So.2d 993 (La.App. 4th Cir.1989).