PLOTKIN, Judge.
On July 11, 1986, the defendant, Kerry Glenn was charged by bill of information with armed robbery, a violation of R.S. 14:64, and attempted second degree murder, a violation of 14:27. The defendant was found guilty as charged on September 26, 1986. On September 29, 1986, the defendant was sentenced to twenty years hard labor without benefit of parole, probation or suspension of sentence on the armed robbery conviction. He was sentenced to thirty years at hard labor without benefit of parole, probation or suspension of sentence on the attempted second degree murder charge. The sentences were to run consecutively. The defendant, Kerry Glenn, appeals his conviction, assigning as error 1) the failure of the trial court to grant a mistrial after a witness for the State was discharged, and 2) an unconstitutionally excessive sentence. We affirm the defendant’s conviction but vacate his sentence and remand for resentencing. FACTS
On May 15, 1986, a group of teenage boys including Kerry Glenn, Irving Carter, and Darren Watson decided that they wanted a pizza. Irving Carter suggested that they rob the pizza delivery man. After ordering the pizza from Pizza Hut, the younger boys were stationed about the neighborhood as lookouts while Glenn, Carter, and Watson waited for the delivery man.
When the pizza arrived, the delivery man went first to 6136 N. Galvez where he was told by Edward Bultler that the person who ordered the pizza lived across the street. As he crossed the street, he was met by the group of boys, including Glenn, Carter, and Watson. One of the boys grabbed the pizza, there was a brief struggle and a gun was fired. Wilfred Hill, the delivery man, was shot in the chest and the bullet remains lodged near his spine.
The three boys escaped and were arrested several weeks later after an investigation. Carter pled guilty to armed robbery before trial and was sentenced to ten years in prison.
The victim, Wilfred Hill, had given descriptions of the suspects the night of the crime, before he was taken into surgery. *990 Additionally, he had identified the defendant and Carter as perpetrators at two separate photo identification lineups. At trial, Mr. Hill testified that he was approached by three men with Carter on his right, the defendant in the middle, and another man on the left. The victim stated that Carter attempted to grab the pizza away from him and that he resisted. Hill testified that he saw a gun flash come from the direction of the defendant and saw something in the defendant’s hand.
The victim’s testimony was corroborated by a number of other witnesses for the State. Edward Bultler witnessed the incident from the house across the street, where the delivery man had first tried to deliver the pizza. Butler testified that he saw Carter struggling with the delivery man and saw the defendant shoot Hill. Pierre Graves, who was present at the planning of the incident, testified that it was Carter’s idea to rob the pizza man. Although he was separated from the three who carried out the crime, Graves testified that he saw Carter attempt to grab the pizza and the defendant shoot the victim. He stated that the defendant was in possession of a short-barreled gun when the robbery was being planned. Derrick Dotson testified that he was part of the group which planned the robbery. He testified that it was the defendant that ordered the pizza. Dotson stated that he did not witness the shooting because he was hiding in his uncle’s truck when the incident occurred.
Another witness, Stephen Magee, was part of the planning of the incident. Ma-gee testified that he saw the defendant with a gun. His testimony was discontinued after he was informed that he was implicating himself in the crime. The trial court informed the jury to disregard the testimony that they had heard from Magee.
The defendant took the stand and denied possessing the gun or shooting the victim. He' testified that Irving Carter shot the victim. Glenn stated' that he went along with the others in the plan to rob the pizza delivery man.
ERRORS PATENT
A review of the record reveals an errors patent. The trial court erred in denying the defendant parole eligibility on the attempted second degree murder charge as the statute does not provide for this. LSA R.S. 14:27(D)(1). Because the sentence will be vacated on other grounds, this errors patent can be cured on resen-tencing.
DISCHARGE OF STATE’S WITNESS
The defendant argues that he was denied his Sixth Amendment right to confront the witnesses against him when one of the State’s witnesses was discharged before the defense could cross-examine him. When Stephen Magee’s testimony was discontinued after he was advised that he may be incriminating himself, Glenn contends he was deprived of his constitutionally protected right to a fair trial because he could not attempt to impeach the witness’ testimony.
An accused’s right to confront witnesses against him in a criminal prosecution means more than being allowed to confront the witnesses physically. This guaranty includes the right of cross-examination. State v. Nash, 475 So.2d 752 (La.1985). However, the U.S. Supreme Court has found that the defendant’s opportunity to impeach a witness is subject to the harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The court stated:
The correct inquiry is whether, assuming that the damaging potential of a cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends on a host of factors, all readily accessible to the reviewing court. These factors include the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidencé corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, *991 and of course, the overall strength of the prosecution’s case.
Van Arsdall, 106 S.Ct. at 1438.
In the instant case, we find that the trial court’s discharge of Stephen Ma-gee without allowing the defense the opportunity to cross-examine him was harmless error. Clearly, the witness should not have been allowed to begin his testimony without first being advised of his constitutional right against self-incrimination. However, under a harmless error analysis, there may be some constitutional errors in a conviction which, in the setting of a particular case may be deemed harmless and which will not require automatic reversal of the conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
Applying the factors enunciated in Van Arsdall, we find that Magee’s testimony was only cumulative. Two witnesses, Butler and Graves, testified that they saw the defendant shoot the victim. The victim, Hill, stated that he saw a flash come from the direction of the defendant and saw something in the defendant’s hand. Accordingly, the testimony of Stephen Magee was not crucial to the State’s case as Ma-gee only testified that the defendant had a gun in his possession at the time the pizza was ordered.
The defendant was the only witness that did not corroborate the essential elements of the Magee’s testimony as the defendant stated that he did not have the gun and did not shoot the victim. Additionally, the defense was able to fully cross-examine every other witness that the State produced. Furthermore, the trial judge admonished the jury to disregard Magee’s testimony. After reviewing the entire record, we find that the the error in denying the defense the right to cross-examine Stephen Magee was harmless beyond a reasonable doubt. Excessiveness of sentence
The defendant contends that the twenty year sentence imposed for the armed robbery violation and the thirty year sentence imposed for the attempted second degree murder violation, which are to run consecutively, are constitutionally excessive.
This court has vacated consecutive sentences for crimes arising out of the same transaction when the trial court failed to articulate any particular reasons for the consecutive nature of the sentencing. State v. Smith, 539 So.2d 993 (La.App. 4th Cir.1989). In the case at bar, the trial court noted the seriousness of the crime and the age of the defendant in imposing sentence. However, no other factors listed in the La.C.Cr.P. art 894.1 sentencing guidelines were articulated. Additionally, the trial judge failed to state any particular reasons why the sentence should be served consecutively. Thus, we vacate the defendant’s sentence and remand for resentenc-ing in accordance with the principles expressed herein. We do not determine at this time whether or not the sentence is excessive, only that the guidelines of La.C. Cr.P. art. 894.1 were not complied with. We reserve the right to determine that issue after compliance with this court’s directives.
For the above and foregoing reasons, we affirm the defendant’s conviction, vacate the defendant’s sentence and remand to the trial court for resentencing.
AFFIRMED IN PART; VACATED IN PART; REMANDED IN PART.