557 So.2d 269 (1990)
STATE of Louisiana
v.
Roger L. COLLINS.
No. 88-KA-2200.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1990.
Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Michael S. Gallagher, S.J., New Orleans, for defendant-appellant Roger C. Collins.
Before KLEES, WARD and ARMSTRONG, JJ.
KLEES, Judge.
The defendant Roger Collins was charged in a nine count bill of information on October 2, 1987 with six counts of armed robbery, two counts of attempted first degree murder, and one count of attempted armed robbery. Trial was held May 3 and 4, 1988, and the defendant was found guilty as charged of four armed robbery counts, the attempted armed robbery charge and aggravated battery on each of the two attempted first degree murder charges.
The trial court imposed the maximum sentence for each count. In addition, she required that two of the 99 year sentences for armed robbery be served consecutively and that one ten year sentence for aggravated battery be served consecutively, a *270 total of 208 years, 198 of which to be served without parole, probation or suspension of sentence.
FACTS:
On August 2, 1987, Darlene Bonis and her husband, Mark Bonis, were parking their car near Kenilworth Playground in New Orleans East. Mr. Bonis had gone to the rear of the car when he heard someone say, "Hand it over." He saw a man, later identified as the defendant, Roger Collins, point a handgun to Darlene Bonis' head. Mrs. Bonis struggled briefly then relinquished her purse. The defendant then approached Mr. Bonis, put the pistol to his head then asked Mr. Bonis for his wallet and car keys. Mr. Bonis complied and the defendant then left in a pink and maroon Ford Granada. Mrs. Bonis selected the defendant's photograph from a photographic lineup and selected the defendant during a physical lineup as the perpetrator of this offense. Mr. Bonis was unable to identify the defendant's photograph but identified him at the physical lineup conducted August 19, 1987. These events formed the basis of count 1 and count 2.
Later that same day, Mr. Leonard Wilkinson was sitting in the driver's seat of his car in his driveway, waiting for his wife to come out of the house. A pale pink Ford blocked the driveway and a man, later identified as the defendant, approached his wife as she was entering the car. The defendant hit Helen Wilkinson on her head with the butt of a pistol and said, "Give it up." The defendant then took the purse and fled in the pink Ford. As Mr. Wilkinson attempted to read the license plate of the fleeing car, the car stopped and the defendant exited the passenger side and shot a pistol at Mr. Wilkinson. At the physical lineup conducted on August 19, 1987, Mr. Wilkinson selected the defendant as the perpetrator of these crimes. These events formed the basis of counts 3, 4 and 5 in the bill of information. Mrs. Wilkinson suffered a stroke two weeks after the incident and was unable to testify at trial.
The next day, at approximately 9:30 a.m., Ms. Mabel Solis was watering her yard when she saw a man, later identified as the defendant, approach her neighbor, Mr. Edward Murray, point a pistol at him and demand his wallet and watch. Mr. Murray gave the defendant the wallet after urging from Mr. Clifford Levet who was on his porch across the street and was watching these events. The defendant then pointed the gun at Mr. Murray and Ms. Solis and ordered them into Mr. Levet's house across the street. (Mr. Levet is Ms. Solis' brother.) As the three victims and the defendant entered the house, the defendant began beating each of them on their heads with the butt of his pistol. Ms. Solis told the defendant that she and her brother lived on social security and there was no money in the house. The defendant then fled without taking anything further.
Mr. Murray did not testify at trial but both Mr. Levet and Ms. Solis selected the defendant's photograph from the photographic lineup and selected the defendant during the physical lineup as the perpetrator of these offenses. Both Mr. Levet and Ms. Solis required sutures to close the wounds on their heads. Mr. Murray's daughter, Betty Ann Murray Alexander, identified a watch taken from the defendant as that belonging to her father. The robbery of Mr. Murray forms the basis of count 7 in the bill of information.
On August 5, 1987, at approximately 10:00 a.m., Mr. Elmer Armstrong was working under the dashboard of his taxi on Eastern Street in New Orleans. He heard someone tell him to turn over and then someone began hitting him with the barrel of a gun. The defendant fled without taking Mr. Armstrong's wallet. Mr. Armstrong suffered three cuts to his head requiring five stitches each. Mr. Armstrong did not identify the defendant at the physical lineup.
Mr. Armstrong's wife, Ms. Lorraine Armstrong, witnessed the assault on her husband. She saw the defendant on top of her husband, hitting him. She screamed and the defendant fled. At the physical lineup, Ms. Armstrong made a tentative identification of the defendant. Ms. Gwen Hunt also witnessed these events and saw a man jump into a slowly moving car and *271 flee. The attempted robbery of Mr. Armstrong forms the basis of count 8.
Officer Mel Gerrets testified that the defendant made several statements regarding these events. According to the statements read to the jury during trial, the defendant admitted to the armed robbery of Mr. and Mrs. Bonis near the Kenilworth Park on August 2, 1987. The defendant stated that he was in his cousin's car with Charles Anderson and Woodrow Wilson who was driving. The defendant's cousin's car was a pink Ford Granada.
The defendant also made a statement regarding the Wilkinson beating and robbery. According to the defendant, Woodrow Wilson committed the armed robbery and beating of the victim while the defendant was driving the pink Granada. The defendant stated that Woodrow Wilson pointed the gun at Leonard Wilkinson and shot.
The defendant also made a statement to investigating officers after his arrest on August 10, 1987 regarding the attempted robbery and beating of Elmer Armstrong on Eastern Street. According to the defendant, he and Charles Anderson approached the victim as he was in his car. The victim, Elmer Armstrong, began hollering and swung a screwdriver at Charles Anderson, prompting Charles Anderson to hit Mr. Armstrong with the gun. An "old lady" then came out of the house causing Charles Anderson and the defendant to flee. The defendant made these statements on August 10, 1987, after he was apprehended with the assistance of information furnished from a confidential informant.
Errors Patent
A review of the record for errors patent reveals none.
Assignments of Error
By the defendant's sole assignment of error, he contends that the trial court erred in imposing excessive sentences.
The trial court imposed the maximum sentences in each of the seven counts. The sentences for counts 1, 2 and 4 are to run consecutively. The sentences for counts 3, 5, 7 and 8 are to run concurrently. Thus, the defendant will serve 208 years at hard labor; 198 of those years to be served without benefit of parole, probation or suspension of sentence. The defendant complains of both the length of the sentences and the fact that the trial judge ordered three of the sentences to run consecutively.
Article 1 § 20 of the 1974 Louisiana Constitution prohibits the imposition of excessive punishment. The sentence may be reviewed for excessiveness even though it is within statutory limits. State v. Cann 471 So.2d 701 (La.1985); State v. Brumfield, 496 So.2d 425 (La.App. 4th Cir.1986), writ denied 503 So.2d 13 (La.1987). The imposition of a sentence, although within the statutory limits, may be unconstitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdan, 457 So.2d 616, 625 (La.1984), cert. denied 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Coleman, 544 So.2d 1302 (La.App. 4th Cir.1989).
To insure adequate appellate review, the record must indicate that the trial court considered the aggravating and mitigating factors set forth in C.Cr.P. art. 894.1 in determining the defendant's sentence. Coleman. However, the trial court need not recite all the factors listed in Article 894.1 before imposing sentence if the appeal record otherwise illumines the sentencing choice. State v. Robichaux, 412 So.2d 1313 (La.1982); See also State v. Kenney, 516 So.2d 175 (La.App. 4th Cir.1987).
In the present case, the trial judge reviewed at length the facts of the events which formed the basis of the seven convictions. The judge was informed that the defendant had a prior conviction for possession of a stolen vehicle in 1986 and that the defendant's rap sheet "goes back to 1981 when he was a juvenile." The trial court then stated,
"... I am unable under the law to suspend your sentence. Aside from the fact that that is not possible, I wouldn't suspend your sentence even if the sentence could be suspended. I think that a person like you should be locked up, and *272 that it is protecting the community to know that you won't be around anymore for a long, long time, and I think that it would be appropriate, Mr. Collins, for you to know that you most probably will not be released from the penitentiary ever." (Sentencing Tr. 3)
Thus, it appears that the trial court adequately complied with Article 894.1. State v. Bell, 543 So.2d 965 (La.App. 4th Cir. 1989).
The Court must look to the facts and sentences of other cases to determine whether the sentence imposed in the present case is too severe in light of the particular circumstances of the appellant's case, keeping in mind that the maximum sentences should be reserved for cases involving the most serious violations of the charged offense and for the worst kind of offender. State v. Quebedeaux, 424 So.2d 1009 (La.1982); State v. Francosi, 511 So.2d 1181 (La.App. 4th Cir.1987).
In State v. Clark, 499 So.2d 332 (La.App. 4th Cir.1986), this Court upheld consecutive sentences of ninety-nine years at hard labor without benefit of probation, parole or suspension of sentence on each of three counts of armed robbery. The trial judge noted that each defendant had a history of criminal activity and that the defendants acted violently by terrorizing and injuring several of the victims of the armed robberies.
In State v. Washington, 482 So.2d 118 (La.App. 4th Cir.1986), the defendant was sentenced to the maximum term of ninety-nine years at hard labor for the armed robbery conviction. The victim of that case was robbed at gunpoint and sexually assaulted.
In State v. Wilson, 452 So.2d 773 (La. App. 4th Cir.1984), this Court again affirmed the maximum sentence imposed for an armed robbery conviction. The defendant in that case had an extensive arrest record and had previous convictions for several misdemeanor offenses. The victim in that case was not injured although the defendant pointed a gun at the victim and threatened to kill him if he did not turn over his jewelry and wallet.
In State v. Nelson, 449 So.2d 161 (La. App. 4th Cir.1984), the defendant held a gun to the head of one of the victims and threatened to shoot two victims if they followed him. When the two perpetrators fled, the victims chased them and were shot at by the defendant. Although the trial judge did not enumerate every factor listed in Article 894.1, this Court determined that the maximum sentence of ninety-nine years imposed was not excessive.
Accordingly, it appears that the defendant's sentences for the armed robbery, attempted armed robbery and aggravated battery convictions are not excessive. This Court routinely upholds the maximum sentences imposed for armed robbery convictions and aggravated battery convictions. The events in this case occurred over a several day period and the facts show brutal beatings of elderly victims during two of these occurrences.
The final question is whether the trial court erred in imposing several sentences to run concurrently.
C.Cr.P. art. 883 provides in part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
Although sentences for crimes arising out of a single course of conduct are generally served concurrently, the imposition of consecutive sentences for such crimes is not automatically excessive. State v. Williams, 445 So.2d 1171 (La.1984); State v. Smith, 539 So.2d 993 (La.App. 4th Cir. 1989); State v. Parker, 503 So.2d 643 (La. App. 4th Cir.1987). When a court imposes consecutive sentences for crimes arising out of a single transaction, it must show particular justification for such sentence beyond a mere articulation for the standard sentencing guidelines established in C.Cr.P. art. 894.1. State v. Messer, 408 So.2d 1354 (La.1982); Smith, supra.
In Smith, the trial court reviewed the facts of the offense and noted it had taken *273 into consideration the provisions of art. 894.1. However, the court did not articulate any reasons why the sentences were to run consecutively. This court vacated the defendant's sentences and remanded for resentencing, finding there was no particular justification for the imposition of consecutive sentences.
In Williams, the defendant was convicted of attempted first degree murder and aggravated rape arising out of a single incident. His consecutive sentences of fifty years for R.S. 14:27, 14:30 and life imprisonment for R.S. 14:42 were affirmed, with the Court noting the trial court quite adequately complied with C.Cr.P. art. 894.1 in giving the reasons for its decision to impose the sentences consecutively, including the defendant's extensive prior criminal history and the viciousness of the instant crimes.
In State v. Thompson, 429 So.2d 862 (La.1983), the defendant was convicted of attempted first degree murder and armed robbery which arose from a brutal beating and robbery of an elderly victim which left her maimed. The Court upheld the defendant's consecutive sentences of forty-five years for his R.S. 14:27, 14:30 conviction and thirty years for his R.S. 14:64 conviction as a second offender.
In State v. Murdock, 416 So.2d 103 (La. 1982), the defendant pled guilty to aggravated crime against nature and forcible rape wich occurred in one incident. The Court upheld the defendant's consecutive ten-year and thirty-year sentences, noting that the trial court's compliance with art. 894.1 showed the viciousness of the crimes, including threats of harm to the victim's small children and the past conduct of the defendant.
In Parker, the defendant was convicted of attempted first degree murder and aggravated burglary which occurred when he shot a policeman who was investigating the break-in of the house which he was burglarizing. His consecutive fifty-year and thirty-year sentences were affirmed in light of the trial court's articulation of the heinous nature of the shooting of the policeman, the defendant's prior adult convictions and juvenile adjudications involving violence, and the fact that the instant crimes occurred a very short time after his release from a correctional facility.
In State v. Alford, 521 So.2d 456 (La. App. 4th Cir.1988), the defendants abducted two teenage girls, armed robbed them, and then violently raped them. They were both sentenced to life imprisonment (R.S. 14:44), fifty years (R.S. 14:64), and life imprisonment (R.S. 14:42), the sentences for R.S. 14:42 to be served consecutively with the other two sentences, noting the trial court's articulation of the reasons for sentence and the violent nature of the offenses.
The defendant's seven convictions in the present case arose from three distinct events. Counts 1 and 2 (the armed robberies of the Bonises) occurred on August 2 as a part of the "same act or transaction;" counts 3, 4 and 5 (the armed robbery and batteries of the Wilkinsons) occurred together on August 2; and counts 7 and 8 (the armed robbery of Edward Murray and attempted armed robbery of Elmer Armstrong) occurred together on August 5. Thus, the trial court must show "particular justification" when imposing consecutive sentences for Counts 1 and 2. The trial court in the present case fails to do this. See State v. Smith. However, in State v. Anthony Jackson, 552 So.2d 445 (La.App. 4th Cir.1989), this Court found that the trial court's compliance with C.Cr.P. art. 894.1 was sufficient to justify the imposition of consecutive sentences arising from a single transaction. Although the trial court did not show a particular justification for imposing consecutive sentences on counts 1 and 2, we conclude that the sentences should be upheld because the trial court could have imposed the sentences in counts 3, 4 and 5 to run consecutively with those imposed in counts 1 and 2, and could have imposed the sentences in counts 7 and 8 to run consecutively with those in 3, 4 and 5. Thus, the defendant would be sentenced to serve a total of 297 years at hard labor without benefit of parole, probation or suspension of sentence (three, ninety-nine *274 year terms to run consecutively; counts 1, 3 and 7).
Accordingly for the reasons expressed herein defendant's convictions and sentences are hereby affirmed.
AFFIRMED.