522 So.2d 1218 (1988)
STATE of Louisiana
v.
Louis STEVENS.
No. KA-8033.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Writ Denied May 13, 1988.
*1219 Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for plaintiff-appellee, State of La.
Sherry Watters, Orleans Indigent Defender Program New Orleans, for defendant-appellant, Louis Stevens.
Before GULOTTA, CIACCIO and WARD, JJ.
WARD, Judge.
Louis Stevens appeals his convictions on all counts of an indictment charging seven felonies committed in two separate incidents on successive days. He was convicted of aggravated rape, aggravated kidnapping, aggravated crime against nature, and armed robbery of one victim which occurred on September 30, 1986, and of the aggravated rape, aggravated crime against nature, and armed robbery of a second victim which occurred on October 1, 1986. On appeal, Stevens's counsel assigns and argues two errors: the Trial Court's refusal to sever the four counts charging crimes against the first victim from the three counts charging crimes against the second victim; and the admission of evidence and permitting of prosecution references to other criminal activity by Stevens. Additionally, in a pro se brief, Stevens argues that *1220 his constitutional rights were violated by a pretrial identification. We find no error and affirm the convictions.
Our decision is based upon the following facts in evidence. On September 30, 1986, the woman who was to become the first victim arrived at her place of employment in New Orleans' Ninth Ward just before nine a.m. As she parked her car, a large black man reached into the car, and holding a knife to the woman's neck, forced himself into the driver's seat. He made the woman lie down on the car seat, and he drove to a secluded area several miles away. In route, he talked to the woman revealing that he knew details about her family and business. He parked the car at the end of a small road overgrown with tall weeds, and while making threats against the woman he went through her belongings in the car, taking jewelry and approximately $350 in cash.
The man then ordered the woman out of the car and holding the knife to her throat, told her to take off her clothing. After she complied, he pushed her into the back seat of the car. He attempted to kiss her and then performed oral sex upon her. He tried to talk her into reciprocating the act, and when she said that she could not, he forced his penis into her mouth. Following that act, he vaginally raped the victim and after making her get on her knees, expressed his intention to have anal intercourse with her. She was able to dissuade him from that act, but instead he raped her vaginally from the rear. He then forced her onto her back again and vaginally entered her once more.
He allowed the victim to put on her outer clothing, and by means of threats, made her promise not to call the police. He told her if she had not contacted the police by two o'clock the following morning, he would telephone her business and leave a message on the answering machine telling her where she could find her car. He gave the victim two dollars for bus fare and drove away in her car.
After being left alone, the woman walked to a road where she was picked up by a truck driver who took her to a truck terminal where she called her family. Although frightened of her assailant returning, she was persuaded to contact the police and gave them a description of the man and showed them the area where he had attacked her. During the initial police investigation, about one-thirty in the afternoon, the victim's car was recovered a few blocks from Louis Stevens's home.
The next morning, the woman who was to become the second victim walked her twelve year old daughter and a younger son to school. She and an infant son then returned to their home which was located about twelve blocks from the scene of the first victim's kidnapping. The doorbell rang about eleven o'clock and when she answered it, the woman was met by a large black man holding a gun. He forced his way in and walked through the house. He demanded money and jewelry and asked whether the woman's daughter was at school. When the woman could only give him ten dollars and a ring she was wearing, he ransacked her house while she watched, holding the baby.
The man then ordered her to remove her clothes and to lie on the bed. Because the man was still holding the gun, she complied and put the baby on the bed beside her. The man raped her while threatening to kill the baby if he cried. The man then asked her if she had ever done oral sex and told her that he was going to teach her something. He made her get on her knees on the floor, and he held the gun to her head while placing his penis in her mouth. He then ordered her back onto the bed where he forced her to have anal intercourse. He then raped her vaginally again.
The assailant took the still naked victim, carrying her baby, into the bathroom and tied her up with a pair of socks. He told her to stay there for two hours, and he left the house. She escaped approximately fifteen minutes later and ran next door where she called the police.
Although both victims were able to give police detailed descriptions of their assailant and the second victim assisted in the production of a composite drawing, Louis Stevens was arrested because the first victim *1221 spotted him on the street in the vicinity of her place of business. She first saw the man who she believed was the assailant in the neighborhood on October 24, but he fled when she screamed. On November 17, however, she saw him again and alerted police who arrested Stevens. Three days later, the second victim was shown a photographic array, and she identified Stevens as the man who robbed and raped her.
On the day of Stevens's trial, his counsel filed a motion to sever the counts of the indictment charging crimes against the first victim from the counts for crimes against the second victim. The Trial Judge denied the motion, and Stevens's counsel now argues that denial was reversible error. Finding no error, we reject this argument.
Code of Criminal Procedure Article 495.1 permits the Trial Court to grant a severance of offenses which have been properly joined in the same indictment upon a showing of prejudice to the defendant. The Trial Court's ruling on a motion to sever is subject to appellate review under an abuse of discretion standard. State v. Celestine, 452 So.2d 676 (La.1984). When, as in this case, offenses are joined under Article 493 because they are "of the same or similar character" and the defense argues prejudice, the first inquiry in reviewing the denial of a severance is to determine whether evidence of each offense would have been admissible under the Prieur standard at the separate trial of the other. State v. Carter, 352 So.2d 607 (La.1977); State v. Washington, 386 So.2d 1368 (La.1980). Treating, as does defense counsel, the four counts as to the first victim as one offense and the counts as to the second victim as another offense, we believe evidence of either "offense" would have been admissible at a separate trial of the other. Nonetheless, this finding is not the sole basis for our holding that Stevens was not entitled to a severance. Even if the Prieur standard is not deemed satisfied, the offenses need not be severed unless the defendant is prejudiced by the joinder of the offenses for one trial. There is no prejudice "when the evidence of each offense is relatively simple and distinct" so that the "jury can easily keep the evidence of each offense separate in its deliberations." Celestine, 452 So.2d at 680.
In this case, the evidence as to counts 1-4 was factually distinct from that relative to counts 5-7, and we see no possibility that the jurors could have confused the evidence of the crimes against the first victim from those against the second. Additionally, the manner in which the State tried the case helped the jury keep the evidence separate. The State presented all evidence of the crimes against the first victim on the first day of trial before, on the second day of trial, presenting the evidence of the crimes against the second victim. The state even recalled one witness so that her testimony regarding medical tests on each victim could be presented at the appropriate point in the trial.
In his motion to sever, Stevens asserted that he would be prejudiced by joinder for one trial of all seven offenses due to the fact that the State's case depended primarily upon the two victims' identifications of Stevens as their assailant. He argued that "use to the unreliability of eyewitness identification testimony, the effect of trying defendant for both rapes simultaneously is to aggregate two essentially inadequate cases into one trial with virtually overwhelming evidence...." This argument contends, in essence, that the evidence of the crimes against each victim, if considered separately, would be insufficient to support the convictions of each offense. Therefore, out of an abundance of caution that Stevens not be deprived of his constitutional rights, we have reviewed the record for sufficiency of the evidence, focusing, as does defense counsel, upon the victims' identifications of Stevens as the perpetrator.
Both victims were attacked during daylight hours. The first victim's ordeal occurred out-of-doors and lasted approximately an hour and a half. The second victim was in the presence of her assailant for approximately an hour under normal household lighting conditions. In neither incident did the assailant attempt to cover *1222 his face or otherwise disguise himself. Although Stevens attempts to discredit the identifications by pointing out discrepancies between his actual appearance and the victims' estimates of the perpetrator's height and description of his facial hair, both victims described the perpetrator as a large black man and made positive identifications of Stevens. Approximately seven weeks after her abduction and rape, the first victim saw and recognized Stevens on the street, completely independent of police intervention. The second victim chose Stevens's picture from among six photographs in a photographic line-up identification which was challenged by a pretrial motion to suppress and found admissible because it met all constitutional requirements.
Additionally, both victims were examined by physicians who testified to injuries and physical conditions consistent with the victims' testimony describing the offenses. The only serious discrepency between the evidence presented by the State and that presented by the defense is in the testimony of Stevens's alibi witnesses. That the jury chose to believe the State's witnesses is a credibility determination not reviewable on appeal. It is not an issue in our review of sufficiency of the evidencefrom which we conclude that viewing the evidence in the light most favorable to the State, a reasonable juror could have found Stevens guilty beyond a reasonable doubt on each of the seven counts.
In the second assignment of error, Stevens's appeal counsel contends that the Trial Court erred by: 1) admitting into evidence an unloaded gun seized from Stevens at the time of his arrest; and 2) permitting the prosecutor to make indirect references to Stevens's prior arrests. Stevens's counsel argues that the State's placing this evidence of other crimes before the jury entitled him to a mistrial under C.Cr.P. art. 770(2).
Stevens's trial counsel attempted by a motion in limine to exclude evidence of the gun, but the motion was denied because the indictment charged that a gun was used in the crimes against the second victim. At trial, however, the second victim was unable to positively identify the gun in evidence as the one used by her assailant, although she testified that it was similar.
On appeal, it is argued that, in addition to its irrelevance, the evidence that Stevens was carrying a concealed weapon in violation of La.R.S. 14:95(A)(1) was prejudicial, denying Stevens a fair trial. We reject both of these arguments.
The Trial Judge correctly ruled that the gun was relevant to elements of the crimes against the second victim, and her testimony indicates that the gun could have been the one used by her assailant. See, State v. Robertson, 421 So.2d 843 (La. 1982). Furthermore, we do not believe that the evidence that Stevens was carrying a gun at the time of his arrest unfairly prejudiced him because the jury was not told that in doing so Stevens was committing a crime. And moreover, Stevens's witnesses explained that members of his family routinely carried weapons for possible self-defense, following the murder of Stevens's step-brother and threats made against other family members. Accordingly, we find no error relating to evidence of the gun.
Stevens's appeal counsel next argues that he is entitled to a new trial because the Trial Judge erroneously refused to grant a mistrial after the prosecutor indirectly referred to Stevens's record of prior arrests. On direct examination, Stevens's mother testified that she was with him on September 30 and October 1, 1986, the dates the crimes occurred. On cross-examination, the prosecutor attempted to impeach the witness by asking her if she remembered where her son was on other dates. The prosecutor read at least some of the dates from Stevens's arrest record. Stevens's counsel contends that this questioning was particularly egregious because, under the guise of impeachment, the prosecutor was eliciting inadmissible evidence of other crimes from the defendant's mother.
In denying the motion for a mistrial, the Trial Judge found that the prosecutor's questions about Stevens's whereabouts on other dates were generally permissible cross-examination. He stated, however, that the prosecutor "walked a fine line" in his use of Stevens's arrest record. We *1223 agree with this assessment and find no error in the denial of a mistrial. The arrest record from which the prosecutor read was not identified before the jury. Furthermore, defense objection intervened to prevent Stevens's mother from testifying about his prior arrests, but her partial response indicated that she remembered at least one of the dates, thus weakening what might otherwise have been a prejudicial tactic by the State. We therefore reject this assignment of error.
Stevens has filed a pro se brief. In that brief, the only assignment of error which was not also argued by appeal counsel, and therefore fully discussed above, is the contention that the Trial Court erred in denying a motion to suppress the identifications made by the two victims. This contention has no merit.
The first victim saw Stevens on the street and identified him before seeking police intervention. When a victim points out the accused to the police, identifying him as the perpetrator of a crime, the victim is not making an identification tainted by suggestive conduct by the police. Only when police or police agents suggest to a victim that she should make an identification of an accused is there a violation of due process, producing an identification that may be suppressed as tainted. Because no governmental action was involved in this identification, there can be no violation of Stevens's constitutional rights, which only protect against acts of government and not against acts of private citizens.
The second victim identified Stevens's picture in a photographic line-up. Both the victim and the police officer who conducted the line-up described the procedures used, and the Trial Judge correctly ruled that the line-up met all constitutional safeguards.
For the reasons stated above, Louis Stevens's convictions and sentences are affirmed.
AFFIRMED.