SCHOTT, Judge.
Defendant was convicted of forcible rape (LSA-R.S. 14:42.1) and sentenced to eight years. In our examination of the record for errors patent we found only that the sentence was illegally lenient in that only *380 the first year of the sentence was to be served without benefit of probation, parole, or suspension of sentence; whereas the statute requires the sentencing judge to impose this restriction on the defendant’s release for at least two years of sentence. However, we are prevented by decisions of the Supreme Court from correcting this illegal sentence.
On February 21, 1986 the victim and two female friends, all nurses from Texas, were on a visit to New Orleans and staying at a French Quarter Hotel. Late that evening they were strolling along Bourbon Street when they were joined by defendant and his friend, Paul. (The two were tried jointly, but Paul who waived the jury, was acquitted by the judge. There were identification problems as to Paul, and the evidence created doubts as to whether the state charged the right person as defendant’s accomplice.) In due course, first one, and then the other friend of the victim, returned to the hotel leaving the latter strolling alone with defendant and Paul.
At some point the three came to defendant’s car where, according to the victim, they forced her inside and each had intercourse with her. She testified that she was held down on the seat of the vehicle, she told them she had to urinate in a ruse to escape and was threatened with a beating if she did, she was undressed by Paul who raped her first, and then by defendant who had been sitting in the driver’s seat until told by Paul it was his turn. She testified she did not resist, but acted as though she had passed out; and she did this because she had read an article about an intended rape victim who saved herself by this tactic. After the two had ravished her they put her out of the car and drove away. With the help of a passer-by she was able to get the vehicle registration number which led to defendant’s arrest.
Defendant’s first two assignments of error question the trial court’s conduct of the sanity hearing and the finding that defendant was competent to stand trial. On September 19, 1986, four days before trial, defendant withdrew his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. The state moved for the appointment of a sanity commission which the trial court granted and scheduled for a hearing on the morning of the trial. The court appointed Dr. Cox and Dr. Ritter, both forensic psychiatrists, to the sanity commission. They both examined defendant and testified at the hearing.
Defendant had been in an automobile accident a few months prior to this alleged crime and suffered head injuries which damaged his brain. In psychological tests conducted on defendant in November, 1985 he attained an I.Q. score of 79 which is at the top of the retardation range. These tests showed considerable memory impairment secondary to his head injuries. Dr. Ritter found that defendant had symptoms of brain damage but was of the opinion that defendant was competent to stand trial. Although he expressed some reservations as to his memory and personality problems resulting from the accident, when asked whether he was (on the day of the trial) able to aid and assist his attorney, Dr. Ritter stated “It seems to me he can”. Dr. Cox likewise thought defendant had memory problems, but in his examination of defendant he found that he could give a complete version of what happened on the evening of the alleged crime and remembered “quite a few details”. Both psychiatrists thought further testing would be helpful to determine defendant’s memory ability at trial time. Dr. Cox was of the opinion that further testing would probably show that defendant’s memory had improved since November, 1985 when he was originally tested.
At the conclusion of the hearing defendant moved for further testing to determine whether his long range recall had improved. The court’s denial of this motion provides the basis for defendant’s first assignment of error in this court. At the point when this motion was denied the case was ready for trial. Defendant had entered his insanity plea four days previously. He gave no reason why he made no previous efforts for additional tests. There was no testimony that defendant's memory was impaired to the extent that he could *381 not cooperate in his defense. There was only some vague testimony about memory impairment based primarily on tests made almost a year previously. But this testimony was offset by Dr. Cox’s testimony that defendant could remember the details of the night of the incident and that defendant’s memory was probably improving. In effect, defendant was asking for a continuance which the court denied. The court’s denial was not an abuse of discretion.
Subsequent developments at the trial convince us that defendant suffered no injustice from the court’s refusal to continue the case to enable defendant to have additional testing. At the trial defendant called as his witness Dr. Scrignar, a psychiatrist, who had seen defendant as a patient nine times between March and June, 1986. Dr. Scrignar had given defense counsel a report in September, 1986 which was made available to Drs. Cox and Ritter. This report states that defendant’s “memory is not good on a three item recall”, but the report does not support a conclusion that his memory was so bad that he could not cooperate in his defense. Nothing in the record suggests why Dr. Scrignar could not testify at the sanity hearing. He was available to testify the next day at trial. This testimony repeated that defendant’s memory was impaired, but it does not support a conclusion that his problem was severe enough to render him incompetent to stand trial.
Defendant’s next assignment is that the trial judge erred in declaring him competent. He argues that he did not meet one of the criteria for this determination set out in State v. Bennett, 345 So.2d 1129 (La.1977) as follows: “... whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times”. The law presumes the sanity of a defendant and the defendant has the burden of proving by a clear preponderence of the evidence that the defendant is incompetent to proceed to trial. R.S. 15:432, State v. Brown, 414 So.2d 689 (La.1982). We do not interpret the testimony of Drs. Cox and Ritter to mean that defendant was unable to recall and relate facts pertaining to his actions and whereabouts at the time of the alleged crime. We agree with the trial judge that their testimony supports and does not refute the presumption that defendant was competent to stand trial.
By his third assignment of error defendant challenges the sufficiency of the evidence to support his conviction of forcible rape. R.S. 14:42.1 defines this crime as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Defendant argues that the victim consented to having intercourse with him and did nothing to show resistance. He relies on facts such as the absence of threats against her, the absence of any physical signs of trauma on her body, and her lack of resistance. In the final analysis defendant would have this court invade the jury’s province to evaluate the credibility of the witnesses and draw reasonable inferences from the evidence. Accepting the testimony of the victim as true, she was forced into a car by two men on a street comer at two in the morning. She was threatened by one and had every reason to believe that resistance on her part would not prevent the rape. Her passiveness was a desperate attempt to avoid the inevitable. Defendant took the witness stand in his own behalf and testified in detail as to his activities from early in the evening before he met the victim and throughout the time he was with her. His testimony differs from hers only with respect to what happened from the time she entered the car until she left it.
There are enough curiosities and incongruities in his testimony to explain why the jury rejected it and accepted the victim’s. We have concluded that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have *382 found that all the elements of the crime were proved beyond a reasonable doubt.
The conviction and sentence are affirmed.
AFFIRMED.