ARMSTRONG, Judge.
Defendant, Arthur Smith, aka Arthur Ford, appeals his convictions and sentences for four counts of aggravated rape, three counts of aggravated crime against nature, four counts of aggravated burglary and attempted burglary of an inhabited dwelling, violations of La.R.S. 14:42, 14:60, 14:64, 14:89.1, 14:27 and 14:62.2 respectively. We affirm his convictions and remand this case to the trial court for re-sentencing.
On January 2, 1987, at approximately 4:20 a.m., L.M. (all of the victims will be referred to by their initials due to the nature of the crimes committed) was taking a bath when a man in a ski mask and armed with a gun entered her bathroom. He ordered L.M. into her bedroom where he forced her to perform oral sex and he raped her. He also masturbated and ejaculated onto L.M.’s body. He then wiped off the semen with a sheet and left. L.M. discovered he had gotten into her apartment through the kitchen window. She described her assailant as approximately 5'8" in height and weighing 160 to 200 pounds with a husky build.
*395 On February 8, 1987, L.M. and a friend went to Magistrate Court. She was looking at a group of prisoners being brought into court and recognized one as her attacker. This was the defendant, and she testified she recognized him by his eyes and his walk. She told the ADA who was in the courtroom that defendant was her attacker. At trial, she identified a ski mask and jacket seized from defendant’s apartment as having been worn by the rapist.
On January 10, 1987, at approximately 5:00 a.m., S.C. was awakened by an armed man with a flashlight and wearing a ski mask. He forced her to her living room, and on the way there, he grabbed a towel. He ordered her to remove her clothes, and he took from her a gold chain and a monogrammed ring. He raped her but ejaculated into the towel which he took with him. He ordered her back to her bedroom, and when she tried to call the police, she discovered her telephone wire had been cut. She described her assailant as approximately 5'5" in height and weighing 160 to 170 pounds. At trial, she identified a chain and ring seized from defendant as having been the ones stolen from her by the rapist; and she also recognized a gun seized from defendant as the one used by her attacker.
On January 14, 1987, at approximately 5:15 a.m., S.E. was awakened by a bright light. She saw a man wearing a ski mask holding a gun and with a “bright light on his forehead.” He ordered her to take off her clothes, and he told S.E. to touch his penis. S.E.’s five year old son came into the bedroom, and the assailant pointed his gun at the child and told S.E. to tell the child to leave, which- she did. The child left, and the attacker ordered her to go downstairs to her living room. He raped her but withdrew and began masturbating. He performed oral sex on S.E. and he then ejaculated into a tissue. They went back to the bedroom, and he took her telephone and a gold chain with an initial and Christ head pendants on it. She described the rapist as about 5'9" tall and weighing 170 pounds. She recognized clothing and a ski mask seized from defendant as those worn by the attacker. She also identified the jewelry and a telephone seized from defendant’s apartment as those stolen from her.
On January 16, 1987, at some time between 3:30 and 3:45 a.m., M.W. was awakened by an armed man wearing a ski mask and holding a flashlight in his mouth. He ordered her to disrobe. M.W. asked him to let her go to the bathroom which he did, and while in the bathroom he grabbed a towel. They went back to the bedroom where he raped her and forced her to perform oral sex. He ejaculated into the towel which he took with him. She described the rapist as between 6' and 6'6" in height and weighing about 195 pounds with a medium build. She was shown a photographic lineup from which she picked out two pictures as looking like her attacker. One of the two pictures was of defendant. She positively identified clothes, a ski mask and a flashlight seized from defendant.
On February 7, 1987, at approximately 5:30 a.m., Marian McGinnis was sitting at her kitchen window watching for the man who had been breaking into the apartments in the housing project in which she lived. She had been watching for some five weeks. That morning, she saw a man she had seen previously during her vigil but whom she had not caught doing anything illegal. She saw him duck behind a car when another man walked past on the way to his car. After the second man drove off, Ms. McGinnis saw the first man come into the yard between her building and an adjacent one. She watched him climb up a series of pipes on the side of the building and then attempt to get into three different windows. When she saw him remove the screen from the third window, she called the police.
Also at this time, Dannetter Carter saw a man behind a car as she was walking to the building in which her mother lived. She went into the building and up the stairs. While waiting for her mother to answer the door, she looked out the window in the stairwell and saw the same man crawling up the pipes on the adjacent building. She saw him try to get into a window and then jump down when he apparently saw a car’s headlights.
*396 Officer Michael Petty responded to Ms. McGinnis’ call, and he spoke with both Ms. McGinnis and Ms. Carter and got their descriptions. Officer Petty spotted the suspect, the defendant herein, who was dressed all in black. He chased the defendant who went through an opening in a fence and into a yard. The defendant then came out of the yard, but he was no longer wearing the black jacket. Defendant was detained, and Officer Petty searched the yard where he found the jacket, a pair of brown gloves, a small flashlight and a small steak knife. A blue ski mask was found a block away. Defendant was wearing black corduroy pants with a pair of gray jogging pants underneath. He was identified at the scene by Ms. McGinnis and Ms. Carter.
Defendant was indicted on 28 counts. All of the crimes occurred between November 6, 1986 and February 7, 1987. Defendant pled not guilty, but he later changed his plea to not guilty and not guilty by reason of insanity. A sanity commission found defendant sane at the time he allegedly committed the various offenses charged and that he was competent to stand trial. Pursuant to defendant’s motion, twelve counts were severed for trial from the other sixteen counts. On May 18th and 19th, 1987, defendant was tried by a twelve person jury and he was found guilty as charged on all twelve counts. The State filed a multiple bill and on May 22, 1987 defendant was sentenced as follows: 1) four consecutive life sentences without benefit of probation, parole or suspension of sentence for the four counts of aggravated rape with defendant sentenced as a multiple offender on one count only; 2) three consecutive thirty (80) year sentences at hard labor for the three counts of aggravated burglary; 3) three consecutive fifteen (15) year sentences at hard labor without benefit of probation, parole or suspension of sentence for the three counts of aggravated crime against nature; and 4) six (6) years at hard labor without benefit of probation, parole or suspension of sentence on the attempted burglary of an inhabited dwelling. All of the sentences were to run consecutively to each other. On May 27, 1987, defendant was sentenced on the aggravated burglary count which had been ommitted when he was sentenced on May 22nd. He was sentenced to thirty (30) years at hard labor to run consecutively to all other sentences.
Access to the apartments of all the victims was gained through a window which could be reached only by climbing up pipes that ran up the sides of the buildings. All of the attacks occurred in public housing projects. In three of the rapes, semen was found, and when tested, it was shown to be that of a non-secretor. Defendant was tested and found to be a non-secretor. Expert witnesses at trial testified that only 20% of the population consists of non-se-cretors.
A review of the record reveals no errors patent except as discussed under Assignments of Error Nos. 4, 5 and 6, infra.
Defendant complains the trial court erred when it only partially granted his motion to sever. He argues that the trial of the twelve counts together was prejudicial and confusing. He points to the trial court’s failure to sentence defendant on one of the aggravated burglary counts at the time he sentenced him on all the other counts and failing to submit to the jury the possible verdict “not guilty by reason of insanity.” He also claims that certain exculpatory evidence, such as the conflicting descriptions of the defendant, could have been lost to the jury considering the twelve counts against defendant.
La.C.Cr.P. Art 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
La.C.Cr.P. Art 495.1 provides:
*397 If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
The trial court’s ruling on a motion to sever under La.C.Cr.P. Art 495.1 should not be disturbed on appeal absent a showing of an abuse of discretion. State v. Labuzan, 480 So.2d 420 (La.App. 4th Cir.1985).
In State v. Washington, 386 So.2d 1368, 1371-1372 (La.1980), the Supreme Court stated:
In ruling on the motion, the trial court must weigh the possibility of prejudice versus the important considerations of judicial economy and administration. In determining whether prejudice may result from the joinder, the court should consider whether the jury would be confused by the various counts; whether the jury would be able to segregate the various charges and evidence; whether the defendant could be confounded in presenting his various defenses; whether the crimes charged would be used by the jury to infer a criminal disposition and finally, whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. See Drew v. United States, 331 F.2d 85 (D.C.Cir.1964); United States v. Weber, 437 F.2d 327 (3rd Cir.1970).
In Drew, supra, the Court, in dealing with a similar joinder situation, noted:
“[5] It is a principle of long standing in our law that evidence of one crime is inadmissible to prove disposition to commit crime, from which the jury may infer that the defendant committed the crime charged. Since the likelihood that juries will make such an improper inference is high, courts presume prejudice and exclude evidence of other crimes unless that evidence can be admitted for some substantial, legitimate purpose. The same dangers appear to exist when two crimes are joined for trial, and the same principles of prophylaxis are applicable.” Drew, supra at 89. [Footnotes omitted].
In some cases, evidence of other crimes is admissible to show:
"... (1) motive, (2) intent (3) the absence of mistake or accident, (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of the one tends to establish the other, and (5) the identity of the person charged with the commission of the crime on trial. When the evidence is relevant and important to one of these five issues, it is generally conceded that the prejudicial effect may be outweighed by the probative value.” Drew, supra at 90. [Footnotes omitted].
The Court noted that any prejudice which would result from the introduction of the evidence of other crimes would not be enlarged by the fact of joinder in those incidents where the crimes would have been admissible in several trials. With these principles in mind, the federal courts have fashioned a rule whereby crimes which are not admissible in separate trials ordinarily should not be tried together. Robinson v. United States, 459 F.2d 847 (D.C.Cir.1972); United States v. Carter, 475 F.2d 349 (D.C.Cir.1973). The Court noted, however, that the federal courts have not found that all such situations merit severance. For instance,
“[10] The federal courts ... have, however, found no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials .. This rests upon the assumption that, with a proper charge, the jury can easily keep such evidence separate in their deliberations and, therefore, the danger of the jury’s cumulating the evidence is substantially reduced.” Drew, supra at 91. Thus, where the parties and the judge through an orderly presentation of the evidence and careful and precise instructions, limit the possible prejudice brought about *398 by joinder, severance may not be mandatory.
The Supreme Court further stated that “a severance need not be granted if prejudice can effectively be avoided by other safeguards.” Id, 386 So.2d at 1372.
In State v. Stevens, 522 So.2d 1218, 1221 (La.App. 4th Cir.1988), writ denied 524 So.2d 517 (La.1988), this court stated:
Code of Criminal Procedure Article 495.1 permits the Trial Court to grant a severance of offenses which have been properly joined in the same indictment upon a showing of prejudice to the defendant. The Trial Court’s ruling on a motion to sever is subject to appellate review under an abuse of discretion standard. State v. Celestine, 452 So.2d 676 (La.1984). When, as in this case, offenses are joined under Article 493 because they are “of the same or similar character” and the defense argues prejudice, the first inquiry in reviewing the denial of a severance is to determine whether evidence of each offense would have been admissible under the Prieur standard at the separate trial of the other. State v. Carter, 352 So.2d 607 (La.1977); State v. Washington, 386 So.2d 1368 (La.1980). Treating, as does defense counsel, the four counts as to the first victim as one offense and the counts as to the second victim as another offense, we believe evidence of either “offense” would have been admissible at a separate trial of the other. Nonetheless, this finding is not the sole basis for our holding that Stevens was not entitled to a severance. Even if the Prieur standard is not deemed satisfied, the offenses need not be severed unless the defendant is prejudiced by the joinder of the offenses for one trial. There is no prejudice “when the evidence of each offense is relatively simple and distinct” so that the “jury can easily keep the evidence of each offense separate in its deliberations.” Celestine. 452 So.2d at 680.
The defendant in Stevens was charged with aggravated rape, aggravated kidnapping, aggravated crime against nature and armed robbery of one victim, and the aggravated rape, aggravated crime against nature and armed robbery of another on successive days. The trial court denied the defendant’s motion to sever the charges as to each victim, and this court found no error in the denial. Under Prieur, evidence of the offenses committed against one victim would have been admissible at the trial of the offenses committed against the other victim. This court further held that even if the Prieur standard were not met, there was no prejudice to the defendant by the joinder of the offenses. The State presented all the evidence of the crimes against the first victim before presenting the evidence of the crimes against the second victim. The evidence was factually distinct as to each crime.
In State v. Dickinson, 370 So.2d 557 (La.1979), the two defendants were charged with the aggravated kidnappings and aggravated rapes of two women which occurred approximately a year apart. The Supreme Court held the trial court did not err in denying the defendants’ motion to sever under Article 495.1. The modus op-erandi of the crimes was strikingly similar, and evidence as to one was admissible as “other crimes” evidence as to the other despite the fact the crimes occurred a year apart. The identity of the assailants was seriously disputed at the trial, and thus the “other crimes” evidence had a legitimate purpose and overriding probative value. Id, 370 So.2d at 560.
In this case, the modus operandi of the crimes was virtually identical. The crimes all took place in public housing projects between the hours of 3:00 am and 6:00 am. Access to the victim’s apartments was gained by the assailant’s climbing up pipes on the side of the building and entering through a window. The victims stated their assailant wore a ski mask and gloves. What is probably the most striking similarity is that the assailant ejaculated into a towel (in two instances), a sheet and a tissue and then wiped himself with it. Clearly, under Prieur, evidence of the various offenses committed against each of the victims would be mutually admissible were those crimes separately tried. Moreover, defendant failed to establish that the trial *399 court’s refusal to sever prejudiced Mm. At trial, the State presented the evidence of the crimes as to each victim separately and in chronological order. Thus the evidence as to the offenses committed against one victim were kept separate from those against the other victims. There is no merit to this assignment of error.
In his second assignment of error, defendant complains that the trial court erred in denying his motion to suppress the evidence because the affidavit used in support for the four search warrants did not establish probable cause. He asserts the affidavit is self-contradictory, confusing and ambiguous in that it refers to two arrests when there is only one arrest.
The affidavit stated, in part:
ON 2-07-87 AT APPROXIMATELY 5:45 AM, THE SUBJECT ARTHUR SMITH, ALIAS ARTHER FORD, BLACK MALE, DOB: 8-24-54, RESIDING 1716 FELICITY STREET, APARTMENT # 2 WAS ARRESTED BY TWO KNOWN NEW ORLEANS POLICE OFFICERS IN THE 1500 (BLK) BIENVILLE STREET. THE SUBJECT WAS CHARGED WITH ATTEMPTED RESIDENCE BURGLARY AND RESISTING ARREST UNDER NOPD ITEM B-6909-87. PURSUANT TO THIS ARREST, THE ARRESTING OFFICERS WERE SUMMONED TO A COMPLAINT, VIA POLICE RADIO, RELATIVE TO A BLACK MALE CLIMBING ON A PIPE, ATTEMPTING TO ENTER A WINDOW OF AN APARTMENT AT A KNOWN ADDRESS IN THE 300 (BLK) MARAIS STREET, LOCATED IN THE IBER-VILLE HOUSING DEVELOPMENT. WHEN THE OFFICERS ARRIVED AT THE SCENE, THEY OBSERVED THE SUBJECT SMITH AND APPREHENDED HIM AFTER A BRIEF FOOT CHASE. THE SUBJECT SMITH WAS BROUGHT BACK TO THE SCENE WHERE HE WAS POSITIVELY IDENTIFIED AS THE PERPETRATOR BY A KNOWN WITNESS.
It is this paragraph of the affidavit which defendant asserts is self-contradictory, ambiguous and confusing.
A magistrate can issue a search warrant only when it is based on probable cause supported by the affidavit of a credible person reciting facts sufficient to establish the cause for issuance of the warrant. U.S. Const. 4th Amend.; La. Const, art. I, Sec. 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant’s knowledge and of which he has reasonably trustworthy information are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Kyles, 513 So.2d 265 (La.1987) cert. denied 486 U.S. 1027, 108 S.Ct. 2005, 100 L.Ed.2d 236 (1988); State v. Fairbanks, 467 So.2d 37 (La.App. 4th Cir.1985) writ denied 472 So.2d 916 (La.1985); State v. Jackson, 508 So.2d 145 (La.App. 4th Cir. 1987) writ denied 512 So.2d 439 (La.1987). The facts establishing probable cause must be contained within the four corners of the affidavit. State v. Morris, 444 So.2d 1200 (La.1984). In determining the existence of probable cause, the magistrate must make a practical, common-sense decision given all of the circumstances set forth in the affidavit. State v. Kyles, supra. In reviewing whether a search warrant was validly issued, the task is to insure the issuing magistrate had a substantial basis for concluding that probable cause existed; and the magistrate’s determination is to be paid great deference by the reviewing court. State v. Isom, 499 So.2d 620 (La.App. 4th Cir.1986) writ denied 505 So.2d 55 (La.1987).
There is no basis for defendant’s claim that the affidavit fails to establish, within its four corners, the existence of probable cause. The complained-of paragraph does make two references to defendant’s being arrested, but by reading the paragraph as a whole, it becomes clear that there was only one arrest.
This assignment of error lacks merit.
In his third assignment of error, defendant asserts the trial court erred in not submitting to the jury the verdict of “not guilty by reason of insanity” after *400 defendant had pleaded not guilty and not guilty by reason of insanity. Defendant admits no objection was made to this omission, but argues that this court reconsider its decision in State v. Falls, 544 So.2d 27 (La.App. 4th Cir.1989). In Falls, the defendant pleaded insanity; but, as in the case at bar, the trial court did not submit to the jury as a responsive verdict “not guilty by reason of insanity.” The record did not show that any objection was made by the defendant, and this court held that under La.C.Cr.P. art. 841 (now La.C.Cr.P. art. 841 A) defendant’s failure to make a contemporaneous objection precluded him from raising the issue on appeal. This court further held that it was not an error patent on the face of the record.
Defendant does not offer a compelling argument for reconsidering or overruling Falls. Accordingly, this assignment of error is without merit.
In assignments of error four, five and six, which are argued together in his brief, defendant first complains that the trial court did not allow three days to elapse between conviction and sentencing as required by La.C.Cr.P. art. 873. Defendant also complains the trial court did not give him time to prepare his motion for new trial and did not wait twenty-four hours to sentence defendant after denying the motion for new trial.
Under La.C.Cr.P. art. 873, “at least three days shall elapse between conviction and sentence.” The running of the three-day delay commences on the day after the conviction. State v. Johnson, 275 So.2d 405 (La.1973); State v. Harper, 444 So.2d 772 (La.App. 4th Cir.1984). Here, the defendant was convicted on May 19, 1987 and sentenced on May 22, 1987; therefore, the trial court failed to comply with article 873. There is nothing in the record showing defendant waived the delay. In State v. Coleman, 514 So.2d 583 (La.App. 4th Cir.1987) writ denied 543 So.2d 14 (La.1989), this court remanded for resentencing where the trial court failed to observe the mandatory delay period because it could not be clearly concluded that the defendant was not prejudiced. State v. Willis, 445 So.2d 170 (La.App. 3d Cir.1984) held that the defendant’s sentence was void where the trial court imposed sentence before the expiration of the delay in the absence of defendant’s waiver.
Therefore, defendant’s sentences must be vacated and the case remanded for re-sentencing.
As to the assignments of error relating to the motion for new trial, there is no written motion for new trial in the record. At the sentencing hearing, defendant stated he was preparing to file a pro se motion for new trial and asked for additional time to complete it. The trial court refused to give him any additional time.
La.C.Cr.P. art. 852 requires that a motion for new trial be in writing; and La.C. Cr.P. art. 853 requires that the motion be filed and disposed of prior to sentencing. The trial court has the discretion to defer sentencing to give the defendant additional time to file the motion under Article 853.
Since the trial court prematurely sentenced defendant, it further erred in not giving defendant additional time to prepare his motion. Thus, on remand for resen-tencing, defendant should be given the opportunity to file his motion for new trial. Since there was no written motion for new trial filed, there is no basis for reviewing whether the trial court erred in not observing the twenty-four hour delay for sentencing after denial of the motion for new trial.
In his seventh assignment of error, defendant claims that the trial court imposed excessive sentences in making his sentences consecutive.
La.C.Cr.P. art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall *401 specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
In State v. Adams, 493 So.2d 835 (La.App. 2d Cir.1986) writ denied 496 So.2d 355 (La.1986), the defendant’s consecutive sentences for two counts of forcible rape and two counts of attempted aggravated rape were found not to be excessive under Article 883 because the offenses were not based on the same act or transaction or part of a common scheme or plan. The rapes or attempted rapes were of four separate victims on separate occasions over a seven month period. Even if the crimes had been part of a common plan, the consecutive sentences were appropriate under La.C.Cr.P. art. 894.1 since the defendant posed an unusual risk to the safety of the general public.
In State v. Pruitt, 474 So.2d 491 (La.App. 4th Cir.1985), this court held that the requirement for concurrent sentences under Article 883 did not apply where the defendant was convicted of two armed robberies of the same victim which occurred two months apart. The two armed robberies were not based on the same act or transaction and did not constitute a common scheme or plan.
In this case, there were five separate acts: 1) the January 2, 1987 aggravated rape, aggravated burglary and aggravated crime against nature; 2) the January 10, 1987 aggravated rape and aggravated burglary; 3) the January 14, 1987 aggravated rape, aggravated burglary and aggravated crime against nature; 4) the January 16, 1987 aggravated rape, aggravated burglary and aggravated crime against nature; and 5) the February 7, 1987 attempted burglary of an inhabited dwelling. Thus, under article 883 the trial court was not required to make the sentences concurrent as to the five separate “acts.” That is, defendant cannot complain the trial court erred in imposing four consecutive life sentences for the aggravated rapes, four consecutive thirty year sentences for the aggravated burglary, three consecutive fifteen year sentences for the aggravated crimes against nature and in making the six year sentence for the attempted burglary consecutive to those sentences.
The trial court also made all of the sentences run consecutively to one another. This in effect imposed consecutive sentences as to crimes arising out of the same act or transaction insofar as the first four enumerated “acts” are concerned. That is, under article 883, the sentences for the crimes arising out of each act are to be concurrent unless the trial court expressly states they are to be consecutive and states the reasons therefor. When consecutive sentences are imposed for crimes arising out of a single transaction, the trial court must articulate particular justification for such a sentence beyond a mere articulation of the standard sentencing guidelines set forth in La.C.Cr.P. Art. 894.1. State v. Messer, 408 So.2d 1354 (La.1982); State v. Jackson, 552 So.2d 445 (La.App. 4th Cir. 1989); State v. Smith, 539 So.2d 993 (La.App. 4th Cir.1989). However, consecutive sentences for crimes arising out of the same act are not per se excessive if the trial court considers other appropriate factors in imposing the sentence. State v. Ortego, 382 So.2d 921 (La.1980), cert. den. sub nom. Ortego v. Louisiana, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). State v. Smith, supra, 539 So.2d at 996, set forth those factors as follows:
Factors to be considered by the sentencing court when imposing consecutive sentences include those enumerated in LSA-C.Cr.P. art. 894.1, and whether the defendant poses an unusual risk to the safety of the public. State v. Piazza, 496 So.2d [1229] at 1232 [ (La.App.1986) ] [factors to be considered include the multiplicity of acts, lack of remorse, and the risk to the public]; State v. Parker, 503 So.2d 643 (La.App. 4th Cir.1987) [other factors include defendant’s criminal history, the dangerousness of the offense, the viciousness of the crimes, the harm done to the victim, the potential for defendant’s rehabilitation, and the danger posed by the defendant to the public]; State v. Lighten, 516 So.2d [1266] at 1268 [(La.App. 2d Cir.1987)]; State v. Tomlin, 478 So.2d [622] at 624 [ (La.App. *402 2d Cir.1985) ]; State v. Piazza, 496 So.2d at 1232. Moreover, Article 894.1 requires that the sentencing court state for the record its considerations and its basis for the sentence. State v. Williams, 445 So.2d [1171] at 1182 [(La.1984)]. See also State v. Tomlin, 478 So.2d at 624 [the sentencing court noted for the record defendant’s prior arrests, his record of harrassing teenage girls, his poor work record, and the serious likelihood of his committing further crimes]; State v. Piazza, 496 So.2d at 1232 (the sentencing court noted that defendant committed the crimes over an extended period of time and the acts were clearly premeditated. Those considerations, along with defendant’s refusal to admit the criminality of his acts led the court to conclude that a lesser sentence would create a substantial risk that defendant, upon release, would perpetuate similar acts upon the unsuspecting public]; State v. Lighten, 516 So.2d at 1268 [defendant’s criminal history as a repeat offender indicated that defendant imposed a risk to the safety of the public so that his consecutive sentences were supported by the record].
In sentencing defendant, the trial court went through the circumstances of the crimes, noting the threats of violence to the victims and to the child of one of the victims and stating that these were “signature” crimes. The trial court also referred to defendant’s prior conviction for attempted aggravated rape in 1976 and set forth the circumstances surrounding that crime which were almost the same as those for which he was being sentenced. The trial court noted that defendant was released from prison for the 1976 conviction on April 24, 1986 and was back on the street committing the identical crime. The trial court stated that no mitigating circumstances under Article 894.1 could be found. The trial court further stated there were only aggravating circumstances in that there was an undue risk that defendant would continue to commit crime, that he was in need of a custodial environment, and that any lesser sentence would deprecate the seriousness of the crime. After going through the 894.1 guidelines, the trial court then imposed the sentences for each group of offenses and then stated that all of the sentences were to run consecutively to each other without further elaboration.
The trial court’s statement of the reasons regarding defendant’s sentence appears to be directed more toward the reasons for imposing the maximum sentences rather than why the sentences were being made consecutive. By contrast, in State v. Jackson, supra, the trial court stated that the sentences were to be consecutive and then stated the reasons for the sentence, and thus it was clear the reasons given pertained to the imposition of consecutive sentences. This case is more like State v. Smith, supra, in that the record does not show a particular justification for the imposition of consecutive sentences for crimes arising out of a single course of conduct.
Therefore, in addition to reasons set forth in the discussion of Assignments of Error Nos. 4, 5 and 6, the case must be remanded for resentencing insofar as the trial court failed to sufficiently articulate its reasons for imposing consecutive sentences for the offenses arising out of the same course of conduct.
In his eighth assignment of error, defendant claims the trial court erred in finding him competent to stand trial. Pursuant to defendant’s changing his plea to “not guilty and not guilty by reason of insanity,” the trial court appointed a sanity commission. The sanity commission, composed of Dr. Kenneth Ritter and Dr. Ignacio Medina, stated in a letter to the trial court that defendant was able to understand the charges against him and could participate in his defense and assist his attorney. The letter also stated that defendant was able to distinguish right from wrong and was sane at the time of the offenses. At the sanity hearing, Dr. Medina testified that defendant was sane and competent to stand trial. He further testified that defendant had a personality disorder in that he was a sexual deviate. Dr. Ritter testified defendant had an antisocial personality with sexual deviation as one of the facets of it. He *403 also testified that defendant made his own rules but knew that what he did was wrong. No other testimony was taken, and the trial court found defendant competent to stand trial.
Defendant argues that mental problems found by the sanity commission along with the sexual nature of the charges interfered with his ability to comprehend the factual and legal issues of the case to such an extent as to prevent him from effectively assisting his counsel.
A defendant is presumed sane, and he has the burden of proving by a clear preponderance of the evidence that he is incompetent to stand trial. La.R.S. 15:432, State v. Brown, 414 So.2d 689 (La.1982); State v. Herring, 527 So.2d 379 (La.App. 4th Cir.1988). The trial court’s determination of a defendant’s mental capacity is entitled to great weight, and it will not be disturbed unless manifestly erroneous. State v. Perry, 502 So.2d 543 (La.1986) cert. denied 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987).
It does not appear the trial court erred in finding defendant competent to stand trial. Defendant failed to prove by a clear preponderance of the evidence that he lacked the ability to understand the charges against him or to assist in his defense. This assignment of error is without merit.
Defendant did not brief two assignments of error and thus they are deemed abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4. Pro se assignments of error were filed but no pro se brief, and thus they too are deemed abandoned. Id.
Accordingly, defendant’s conviction on all twelve counts is affirmed and his sentences vacated and the case remanded for resentencing.
CONVICTIONS AFFIRMED, SENTENCES VACATED, REMANDED FOR RESENTENCING.